# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| RONDERIO DESHUN PERRY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-580 |
| | § | |
| CITY OF HOUSTON, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are (1) a motion to dismiss the claims against defendant City of Houston (the "City") pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 3); and (2) a motion to dismiss the claims against defendant J.W. Marcus pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 5). Having considered the motions, responses, and applicable law, the court is of the opinion that both motions should be GRANTED.

## I. BACKGROUND

This claim involves alleged violations of Plaintiff Ronderio Deshun Perry's constitutional rights by five Houston Police Department ("HPD") officers and the City. Dkt. 1. Perry asserts that while he was driving a vehicle home from work on February 27, 2010, HPD officers L.E. Lopez and J.W. Marcus directed Perry to pull over. *Id.* After Perry stopped his vehicle at the next light, Perry alleges Marcus and Lopez approached Perry's vehicle and proceeded to bang on his windows, open his vehicle door, pull Perry from the driver's seat, and throw Perry on the ground. *Id.* Perry claims that Marcus, Lopez, and three other unidentified officers (collectively "Officers") then began beating Perry on his head and body with fists, flashlights, and batons. *Id.* As a result of the alleged beating,

Perry claims that his shirt became splattered with blood and he suffered swelling and bruising across his whole body, multiple cuts on his face, and two chipped teeth.  *Id.*

Perry alleges that Marcus and Lopez then transported Perry to the jail where, upon seeing Perry's injuries and clothing, the jailer refused to accept Perry until he was cleared by a medical provider.  *Id.*  Marcus and Lopez next transported Perry to Ben Taub Hospital where Perry allegedly waited three hours before seeing a physician.  *Id.*  Perry alleges that the physician cleaned Perry's wounds and gave him a prescription for pain medication that he could not fill.  *Id.*  After the examination, Perry was taken back to the jail, where he remained for twenty-four hours.  *Id.*  The following day, Lopez submitted a report, and felony changes for evading arrest were filed against Perry.  *Id.*  On March 3, 2010, Perry filed a complaint with HPD's Internal Affairs.  On April 19, 2010, a Harris County court granted the District Attorney's motion to dismiss the evading arrest charge against Perry.  *Id.*

On February 24, 2012, Perry filed this complaint against the City, Marcus, Lopez, and the three unidentified officers who allegedly participated in beating Perry on the night of his arrest. Count 1 of the complaint asserts claims against the City for a violation of Perry's constitutional right against the use of unreasonable, unnecessary, and excessive force and his right to medical care for injuries received while in custody.  *Id.*  Perry alleges that the City maintained two policies that discouraged victims from filing complaints and encouraged police misconduct.  *Id.*  First, Perry claims the complaint form itself intimidated victims by notifying claimants they would be subject to perjury charges for falsely made complaints and that this kept some victims from reporting police misconduct.  Second, Perry claims that a statement on HPD's Internal Affairs website stating that it maintains a "consistently thorough investigative process" to protect officers from false or misinformed allegations, creates a "chilling effect" on victims' willingness to report violations in

2

fear of the investigation.  *Id.*  Count 2 of the complaint alleges that the Officers violated the same constitutional rights.  *Id.*  Perry asserts the claims against the Officers pursuant to 42 U.S.C. § 1983. *Id.*  Count 3 of the complaint is a negligence claim and appears to be pled against both the Officers and the City.[1]  *Id.*  It alleges that the Officers used excessive force and that no reasonable person in the Officers' position could have thought the facts justified the Officers' actions.  *Id.*  This claim is brought under section 101.021 of the Texas Civil Practices and Remedies Code.  *Id.*

The City filed a motion to dismiss the claims made against it pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "First MTD").  Dkt. 3.  Addressing the inadequate medical care claim, the City argues that (1) Perry fails to identify a policy maintained by the City that was the moving force behind the alleged inadequate medical care; and (2) the delayed and substandard quality of treatment alleged by Perry does not rise to the level of deliberate indifference required to state a section 1983 claim.  As to the excessive use of force claim, the City argues that Perry fails to allege any facts identifying how the "intimidating" statements online caused Perry's alleged injuries.

In response to the First MTD, Perry argues that section 1983 claims do not have a heightened pleading requirement and that he asserted a factual basis demonstrating that the Officers, Internal Affairs, and the new police chief acted under the color of the law.  Dkt. 6.  Perry argues that alleging that these individuals were acting under the color of law should be sufficient to allow him access to discovery so that he may catalog the defendants' "extensive use of policy to deny immediate medical

---

[1]  Count 3 is entitled "Tex. Civ. Prac. & Rem. Code § 101.021(2) Negligence Claim Against Defendants, J.W. Marcus (Badge # 6559), and L.E. Lopez (Badge # 7490) and At Least Three Unknown Police Officers."  Dkt. 1.  The count does not specifically refer to the City, but it incorporates the background section of the complaint, and the section of the Texas Civil Practices and Remedies Code to which it refers deals with municipal liability.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2011).

3

treatment to injured arrestees" as well as find "evidence of intimidation of victims of excessive force as a result of the 'perjury clause.'"  *Id.*

The City and Marcus filed a separate motion to dismiss the claims against Marcus pursuant to Rules 12(b)(1) and 12(b)(6) (the "Second MTD").[2]  Dkt. 5.  The City and Marcus argue that Perry's pleading against Marcus with regard to inadequate medical care is insufficient to meet the extremely high standard necessary to adequately plead deliberate indifference under the Fourteenth Amendment and that the negligence claim cannot be brought against Marcus *and* the City because section 101.106 of the Texas Tort Claims Act precludes Perry from pursuing the claim against the individual officers *and* the City, and if the municipality is named, any claims against the employee of the municipality are immediately and forever barred.  *Id.*

Perry agrees that his tort claims are properly brought against the City, not the Officers.  Dkt. 14 at 4.  Thus, the motion to dismiss the negligence claim against Marcus contained in the Second MTD is GRANTED and that claim is DISMISSED WITH PREJUDICE.  Perry argues, however, that he sufficiently pled that Marcus violated his constitutional right to medical care because he pled that Marcus's actions clearly rose to deliberate indifference when he took Perry to jail instead of the hospital despite his injuries being so severe that the jailer refused to take him.  *Id.*

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)).

---

[2] Lopez did not join in this motion.  The City's legal department is representing the City and Marcus.  Lopez has not answered or otherwise appeared.

In considering a 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 1959.

Under *Iqbal–Twombly*'s two-pronged approach, the Court must determine whether the pleadings contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555. The first step for the Court is to determine those pleadings that are more than just "mere conclusions" and thus are entitled to the presumption of truth. *Iqbal*, 129 S. Ct. at 1949–50. Then, assuming the veracity of these facts, the Court must determine whether the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "plausibly give[s] rise to an entitlement to relief." *Id*.; *see also Rhodes v. Prince*, 360 F. App'x 555, 557 (5th Cir. 2010). If the pleadings fail to meet the requirements of *Iqbal* and *Twombly*, no viable claim is stated and the lawsuit is subject to dismissal.

### III. ANALYSIS

#### A.    The First MTD

In the First MTD, the City seeks dismissal of Perry's claims against the City because Perry

has failed to allege that the City had a custom, policy, or practice that was the moving force behind

his alleged constitutional injuries.[3] Dkt. 3.  "[M]unicipal liability under section 1983 requires proof

of three elements: a policymaker; an official policy, and a violation of constitutional rights whose

'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.

2001).  To meet the first element, a plaintiff must allege that "the policy was promulgated by the

municipality's policymaker." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). To

meet the "official policy" element, the plaintiff must either allege (1) a written policy or procedure

that is officially adopted or promulgated by the policymaking authorities of a governmental agency;

or (2) a persistent, widespread practice of governmental agency officials or employees which,

although not officially promulgated or adopted, is so common and well settled as to constitute a

policy or custom that fairly represents the agency's policy.  *Piotrowski*, 237 F.3d at 579.  To meet

the "moving force" element, the plaintiff must show direct causation by establishing "'a direct causal

link' between the policy and the violation." *Peterson*, 588 F.3d at 848.  It is not enough for the

---

[3] The City purports to seek, in the First MTD, dismissal of *all* claims made against it.  Dkt. 3.
However, it does not provide any argument for dismissal of the claim under Texas Civil Practices
and Remedies Code section 101.021, which is based on the Officers' alleged negligence while acting
within the scope of their employment.  *See* Dkts. 1, 3; *see* Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021.  It is not altogether clear from an examination of the complaint that Perry is asserting
Count III—the count alleging negligence pursuant to section 101.021—against the City, as he does
not actually *name* the City in the Count.  *See* Dkt. 1.  However, Perry does assert the claim under
section 101.021, which deals exclusively with governmental liability.  *See* § 101.021; Dkt. 1.  The
City concedes in its Second MTD that Count III is pled against both the City and the Officers.  Dkt.
5 at 10 ("By suing both the City and the employee for state law tort claims, plaintiff has forever
foreclosed suit against the individual employee.").  The court will thus construe the claim as being
made against all defendants.

plaintiff to allege that a change in policy may have prevented the violation, the municipality's policy "must be affirmatively linked to the constitutional violation." *Faire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

In the instant case, Perry fails to adequately plead a section 1983 claim against the City for violating his constitutional right to receive adequate medical care and his constitutional right to not be subjected to unreasonable excessive force. First, his claim based on inadequate medical care fails because the complaint does not identify a policy maintained by the City that caused the alleged violation. With regards the alleged constitutional violation based on unreasonable excessive force, while Perry has alleged that the perjury clause and investigation policy maintained by the City could have caused the violation, Perry failed to allege that either policy was the moving force behind the Officers' alleged decision to use unreasonable excessive force while arresting Perry.

### 1. Inadequate Medical Care

A pretrial detainee's claims for denial of medical care are governed by the Fourteenth Amendment's Due Process clause. *Hare v. City of Corinth*, 74 F.3d 633, 647-48 (5th Cir. 1996). Under the Fourteenth Amendment, a pretrial detainee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983). To prevail, Perry must allege that the officers or examining physician acted with subjective deliberate indifference to his serious medical needs. *See Flores v. Cnty. of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). To succeed in holding the City accountable for such a violation, Perry must establish that the violation resulted from a policy or custom adopted or maintained by the City "with objective deliberate indifference to the detainee's constitutional rights." *Grabowski v. Jackson Cnty. Public Defenders Office*, 79 F.3d 478, 479 (5th Cir. 1996) (en banc) (citations and quotations omitted). Perry, however, did not allege any facts that

7

the City maintained a policy that caused the Lopez and Marcus to transport Perry directly to jail even if the officers knew Perry needed immediate medical attention.[4]  Accordingly, the portion of the First MTD relating to alleged failure to provide adequate medical care is GRANTED, and the claim made against the City for inadequate medical care is DISMISSED.

###    2.      Excessive Force

Claims that law enforcement officers used excessive force in effecting arrests are analyzed under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 1867-68 (1989).  To state a claim for a violation, Perry must allege (1) some injury, (2) which resulted directly from the use of force that was clearly excessive to the need, and (3) that the force used was objectively unreasonable.  *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).  In determining the reasonableness, the court assesses the officers' use of force in light of the facts and circumstances confronting them at the time they acted, without regard to their underlying intent or motivation.  *Id.* at 397 ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").  If a plaintiff establishes a constitutional violation, he or she may only hold the municipality liable if he or she can show that an official policy promulgated by the municipal policymaker was the moving force behind the violation.  *Peterson*, 588 F.3d at 847.

Perry alleges that two policies maintained by the City gave rise to the violation.  Dkt. 1.  The first, a perjury clause, was located on the police misconduct complaint form.  *Id.*  The clause

---

[4]  Perry's response does indicate that he believes discovery will catalogue the extensive use of a policy to deny immediate medical treatment to injured arrestees and a policy of failing to adequately train its officers, however, there is no mention of these alleged policies in the actual complaint. *Compare* Dkt. 1, *with* Dkt. 6.

threatens criminal prosecution of falsely made complaints.  *Id.*  The second, a statement on HPD's Internal Affairs website, indicated that all complaints made would undergo a consistent and thorough investigation process to prevent false allegations against employees.  *Id.*  The City argues that the purpose of these policies was to ensure accurate investigations and discourage falsely made claims. Dkt. 3.

As Perry's claim is based on the City's policies to investigate all claims and prosecute falsely made complaints, Perry must have plead (1) that the officers knew the policies dissuaded victims from filing complaints, and (2) that this knowledge was the "moving force" that enabled the officers to use unreasonable excessive force during Perry's arrest.  *See James v. Harris Cnty.*, 508 F. Supp.2d 535, 546 (S.D. Tex. 2007), aff'd 577 F.3d 61 (5th Cir. 2009) (finding an inadequate investigation policy did not cause plaintiff's harm because there was no evidence that the poor investigation was known generally or by those who used excessive force).  Perry, however, did not plead either.  First, Perry fails to list any facts suggesting the Officers knew of or considered the perjury clause and investigation policy when they arrested Perry.  *See* Dkt. 1.  Second, Perry's attempt to link the policies to the excessive force allegedly used during his arrest is simply too far of a stretch.  While it is plausible that there may be some victims who would decide to not file a complaint against a police officer after having seen the warnings about the thorough investigation of complaints and criminal prosecution of falsely made complaints, resulting in *fewer* complaints, it is simply not plausible that HPD officers felt free to use excessive force during arrests based on a belief that victims would not file complaints due to the warnings.  The fact that Perry filed a complaint belies the logic of this argument.  Clearly, even if HPD officers believed that some victims may not file complaints due to the policies, the warnings would not keep all victims from filing complaints—they did not keep Perry from filing a complaint—so it would be nonsensical for officers believe that the

9

specific victim upon whom they used excessive force would not file a complaint because he or she was intimidated by the policies.  The court cannot reasonably infer an obvious consequence of the policies is officers using unreasonable excessive force during arrests.

Moreover, even if Perry's theory about the policies causing officers to use excessive force were plausible, the complaint does not identify how either of these policies was made or maintained with deliberate indifference as to the known or obvious consequence.  Here, Perry did not allege any facts that the City had knowledge that either policy led to the use of unreasonable excessive force.[5] Therefore, the City's portion of the First MTD relating to Perry's claim against the City for excessive force is GRANTED, and the claim is DISMISSED.

**B.      Second MTD**

In the Second MTD, Marcus and the City move for dismissal of Perry's constitutional claims and tort claims against Marcus.  Dkt. 5.  As noted above, Perry concedes that the tort claims are properly brought against the City rather than Marcus, so the tort claims against Marcus are DISMISSED.  With regard to the constitutional claims, the City asserts that the allegations of deliberate indifference to medical needs in the complaint simply do not rise to the high standard necessary to make out a constitutional claim.  *Id.*  Perry notes that his complaint suggests that he was beaten by an entire cadre of police officers and sustained multiple cuts and bruises and two chipped teeth, yet he was initially transported to jail rather than a hospital.  Dkt. 14.  Perry also points out that his complaint alleges that the jailer would not take him because of the severity of his injuries.  *Id.*

---

[5] In response, Perry alleges the City's deliberate indifference may be inferred from the new police chief removing the perjury clause from the complaint form.  Dkt. 6.  But, Perry did not assert in the complaint that the new police chief removed the perjury clause, and, as noted above, Perry's attempt to raise a new argument in his response cannot cure his original complaint.  Additionally, the argument is unhelpful because the act of improving polices does not "demonstrate the infirmity of those that were replaced."  *Dusenbery v. United States*, 534 U.S. 161, 172, 122 S. Ct. 694 (2002).

A plaintiff may state a claim against a government official under section 1983 by alleging that he or she was deprived of a right or interest secured by the Constitution and that this deprivation occurred under the color of state law.  *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

> If the allegations do not establish a violation of a constitutional right, the officer is entitled to qualified immunity. . . . If the allegations could make out a constitutional violation, we must ask whether the right was clearly established – that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . If an officer makes a reasonable mistake as to what the law requires, the officer is entitled to immunity.

*Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citations and quotations omitted).

Here, the pleadings are insufficient to infer that Marcus acted with deliberate indifference when he and Lopez initially transported Perry to jail rather than the hospital because there is no allegation of additional injuries resulting from the stop at the jail and no allegation of "substantial harm."  The Fifth Circuit has clearly stated that "[d]eliberate indifference is an extremely high standard to meet."  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  The "facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question and the alleged official dereliction."  *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  A plaintiff must allege that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard of serious medical needs."  *Domino*, 239 F.3d at 756 (citations and quotations omitted).  Since Perry eventually received medical treatment, Perry must allege that the delayed medical treatment was a result of deliberate indifference resulting in "substantial harm" to Perry.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results

11

in substantial harm."). "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The court finds the pleadings insufficient to infer Marcus and Lopez acted with deliberate indifference when they initially transported Perry to jail rather than the hospital because there is no allegation of additional injuries resulting from the stop at the jail—and certainly no allegation of "substantial harm."

Similarly, Perry failed to state how the three-hour wait and allegedly "substandard" medical examination violated his right to adequate medical care. Perry must allege that the examining physician was subjectively indifferent to Perry's constitutional right when administering the examination. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th 1999). Additionally, the Fifth Circuit has held that an "[u]nsuccessful medical treatment does not give rise to a [section] 1983 cause or action. . . . Nor does '[m]ere negligence, neglect or medical malpractice.'" *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (citations omitted). Here, Perry alleges that he arrived at the hospital with bruising and cuts on his face, that it was three hours before he saw a doctor, and that during the examination the physician cleaned Perry's wounds and prescribed pain mediation. Dkt.1. These allegations do not plausibly indicate that the treating physician was subjectively indifferent to Perry's right to adequate medical care. Because Perry does not allege the physician acted with the requisite intent, he has not properly plead a constitutional violation occurred.

In sum, the allegations in the complaint simply do not meet the extremely high standard of deliberate indifference. Thus, the Second MTD is GRANTED, and the claim against Marcus related to inadequate medical care is DISMISSED.

## IV. Conclusion

The First and Second MTDs (Dkts. 3, 5) are GRANTED.  All of Perry's claims against the City, except for the claim under section 101.021 of the Texas Civil Practices and Remedies Code, are hereby DISMISSED.  Additionally, Perry's claim against Marcus for inadequate medical care and his tort claim against Marcus are DISMISSED.

It is so ORDERED.

Signed at Houston, Texas on August 24, 2012.

_____
Gray H. Miller
United States District Judge